*In re* MARRIAGE OF MADONNA M. CLARK, Plaintiff-Appellee, and THOMAS W. CLARK, Defendant-Appellant.

Third District   No. 3—85—0788

Opinion filed November 19, 1986.

Gordon A. Cochrane, of Matteson, for appellant.

Thomas E. Cowgill, of Block, Krockey, Cernugel & Cowgill, of Joliet, for appellee.

Lilli Papesh-Kuzma, of Joliet, guardian *ad litem*.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Thomas W. Clark, appeals from the trial court's denial of his petition to modify the original judgment awarding custody of the three children of the marriage to the plaintiff, Madonna M. Clark. Further, the court denied the defendant's petition to modify the property division with respect to the marital residence. Defendant sought to require the plaintiff to transfer possession to him and to execute a quitclaim deed in his favor. As to both the custody and the property aspects of the petition to modify, we affirm the order of the trial court.

In denying the petition to modify custody, the trial judge found that the defendant had failed to meet his burden under section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1983, ch. 40, par. 610(a)), applicable to custody modifications within two years after the entry of the judgment. The defendant urged that the court should apply the "best interest" standard, based upon a showing of a change in circumstances since the prior judgment. The court ruled that under section 610(a), before making a change of custody, it was required to find that the child's present environment may seriously endanger his physical, mental, moral, or emotional health.

As amended in 1982, section 610 of the Act reads in part:

"Sec. 610. Modification. (a) Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.

(b) After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child." Ill. Rev. Stat. 1983, ch. 40, par. 610.

Under the defendant's interpretation of the foregoing statute, the standard to be applied to petitions filed within two years of judgment, as well as to those filed more than two years after judgment, is that which is contained in section 610(b). He argues that section 610(a) fails to set forth any evidentiary standard pertaining to the determination of change of custody, but rather establishes a requirement of showing a present endangerment only as a preliminary step to a hearing. That is, once the court finds that the petitioner, by affidavit, has shown that there is reason to believe that the child's present environment poses the requisite danger, the court must go on to decide the merits of the petition on the basis of the lesser standard that a change in circumstances has occurred and that a change of custody would be in the best interests of the child.

The sole authority cited by the defendant in support of his position is the unpublished order of *In re Marriage of Grisham* (1984), 125 Ill. App. 3d 1178 (Rule 23 order). Although the case appears to be one in point, under Supreme Court Rule 23 (87 Ill. 2d R. 23), we are not permitted to consider the decision as setting any precedent for our ruling in this case, and such an order should not be cited.

■ In any event, a more persuasive statutory interpretation is offered in *In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 484 N.E.2d 1175. There, the Second District reversed a change of custody based solely upon section 610(b) findings, holding that by reenacting subsection (a), the legislature had demonstrated a clear intent to allow modifications within two years only in emergency situations. We agree with the Second District's conclusion that "[i]t would make little sense to require a preliminary showing of endangerment if that was not one of the standards to be applied later at trial." 137 Ill. App. 3d 439, 442, 484 N.E.2d 1175.

The court in *Carter* further determined that the legislature intended that the requirements of subsection (b) would also apply to modifications filed within two years. (*In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 442, 484 N.E.2d 1175.) Consequently, as the trial court correctly ruled, the findings which result in a decision to change custody must be made on the basis of clear and convincing evidence.

Having determined, therefore, that the trial judge employed the correct standard, we must now consider whether his decision was against the manifest weight of the evidence. The defendant presented the testimony of two of the children's teachers, who described the abilities of Bobby, age nine, and Cristin, age seven, as being far in excess of their performance in school. Both were receiving failing grades after having previously done much better, and the teachers ex-

pressed the opinion that the children's mother failed to follow up at home by supervising their homework, responding to failing papers and notes which the teachers sent home, or helping with reading and spelling. However, these witnesses also testified that the children are kept clean and well-groomed.

The eldest child, Tommy, age 10, suffers from a hearing impairment, and the evidence indicated that the plaintiff neglected to obtain a hearing aid for him for almost two years, even after the defendant made arrangements to get one at no expense.

Tommy attends a special-education program due to a learning-disability problem. The plaintiff missed an important school conference with his teacher, social worker, language aides, and psychologist. Mrs. Clark testified that Tommy didn't tell her about the meeting until that night, whereas Mr. Clark said that the school had notified him about a month in advance.

Extensive evidence was also presented concerning the dilapidated condition of the plaintiff's home, which is the former marital residence; the plaintiff's sexual relationship with a man from Michigan; and the plaintiff's failure to return for over two months from what was to have been a weekend trip to Michigan, while the children spent the summer with the defendant.

The judge interviewed each of the children outside the presence of the parents and their attorneys, and although all three expressed a preference to live with their father, the boys' primary complaint was that their mother's boyfriend was unpleasant to them and that Mrs. Clark paid more attention to him than to them.

The guardian *ad litem* appointed for the children recommended that the petition be denied for lack of clear and convincing evidence that the children's present environment posed a serious endangerment to their well-being. The trial judge concurred with the guardian's assessment, finding that the children appeared to be suffering no particular physical, mental, moral, or emotional problems other than the customary trauma associated with divorce and custody proceedings.

■ We believe the court's determination to be supported by the evidence. While it cannot be overlooked that the plaintiff's overall level of attentiveness and concern for her children's welfare leaves much to be desired, the trial court was correct in basing its ruling on the lack of evidence that the mother's shortcomings had had a serious effect upon the children.

With the exception of Bobby and Cristin's deteriorating school performance, the evidence showed the children to be well-adjusted.

Despite the testimony of the teachers concerning the lack of follow-up at home, the evidence was inconclusive that the children's poor grades were attributable to the plaintiff's neglect, as opposed to the general aftermath of the divorce. We note that the children did well enough until sometime during the 1984-85 school year, although the record reflects that they had been in their mother's custody since December of 1982. Therefore, particularly in light of the statutory burden of proof by clear and convincing evidence, we are unable to say that the court's decision was against the manifest weight of the evidence.

■ We turn now to the issue of the marital residence. The judgment for dissolution of marriage provided for the sale of the residence and an equal division of the net sale proceeds between the parties. However, the defendant was granted the right to elect to buy out the plaintiff's interest by paying half of the difference between the outstanding mortgage and taxes due at the time he exercised such option and the market value at the time of the judgment, $72,000.

In addition, the plaintiff was awarded rehabilitative maintenance in the form of the possession of the premises until sale, with no obligation to pay the mortgage, taxes, and insurance until after December 31, 1984. By subsequent order, the court terminated the maintenance provision and required the plaintiff to assume the responsibility for the foregoing expenses and for the proper maintenance of the premises.

The evidence clearly established that the plaintiff had permitted the property to fall into disrepair and had failed to make any payments on the house. The result was the commencement of foreclosure proceedings and an estimated diminution in the value of the property to $60,000.

The defendant petitioned for immediate possession of the marital home and for an order directing the plaintiff to convey her interest to Mr. Clark by quitclaim deed in consideration for his agreement to hold her harmless. He calculated that half of the difference between the mortgage balance and the current market value of $60,000, less the amount of Mrs. Clark's mortgage, tax, and insurance payments in arrears, as well as foreclosure fees and attorney's liens which had attached to the property, would leave a balance of roughly $2,500 as the plaintiff's share of the equity. The defendant argues that this amount is more than offset by the $12,000 reduction in the property's value which resulted from Mrs. Clark's "waste," so that the plaintiff is actually entitled to nothing in return for conveying her interest to him.

The trial court ruled that it lacked the jurisdiction to modify the property disposition of the judgment for dissolution. We agree.

Section 510(a) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)) precludes the revocation or modification of provisions as to property disposition unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State.

However, the defendant contends that section 510(a) does not preclude the court from granting the requested relief. He submits that his petition sought to modify not the property award, but rather the rehabilitative maintenance award, since possession of the home was granted to the plaintiff in the form of maintenance, which is modifiable under section 510(a) upon a showing of a change in circumstances.

This argument fails for several reasons. First, the defendant requested more than the termination of the plaintiff's right to possession of the marital residence pending sale. He asked for a quitclaim deed, which clearly placed the matter within the realm of the division of property. (Cf. Lamp v. Lamp (1980), 81 Ill. 2d 364, 410 N.E.2d 31.) Second, Mr. Clark would have the court void the buy-out provision specified in the judgment and determine the plaintiff's equity on the basis of the current market value of $60,000. To do this would obviously require a modification of the judgment. Finally, in the interim between the entry of the judgment and the filing of defendant's petition to modify, the trial court terminated the maintenance provision, leaving nothing further to modify with respect to maintenance.

Therefore, we find that the trial court was correct in ruling that it lacked jurisdiction to grant the petition to modify as to the marital residence.

For the reasons stated, we affirm the judgment of the circuit court of Will County.

Affirmed.

HEIPLE and STOUDER, JJ., concur.